UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PATRICK AKINA and LISA AKINA,

Plaintiffs,

v.

STATE FARM FIRE AND CASUALTY INSURANCE COMPANY,

Defendant.

CASE NO. 2:25-cv-00610-JHC

ORDER

# I
# INTRODUCTION

This matter comes before the Court on Defendant's Motion for Summary Judgment (Dkt. # 22), Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 27), and Defendant's Cross-Motion for Summary Judgment Re: Contamination (Dkt. # 31). The Court has considered the materials filed in support of and in opposition to the motions, the rest of the record, and the applicable law. The Court finds oral argument unnecessary. Being fully advised, and for the reasons below, the Court DENIES all three motions (Dkt. ## 22, 27, & 31).

## II
## BACKGROUND

This action is a first-party property insurance suit brought by Plaintiffs Patrick and Lisa Akina against Defendant State Farm. *See generally* Dkt. # 1-1. The facts are largely undisputed.

In May 2024, Plaintiffs bought a house located at 7481 Skagit View Drive, Concrete, WA 98237 (the Property). Dkt. # 21 at 2. Plaintiffs did not conduct an inspection before purchasing the Property, nor did they receive a disclosure form from the sellers. *See* Dkt. # 25-1 at 10, 12. Before moving in, Plaintiffs purchased a homeowners' insurance policy for the Property—Policy No. 47-G9-0544-9 (the Policy). Dkt. # 21 at 2; *see also* Dkt. # 25-1 at 4. The Policy was issued by Defendant, and was in effect from May 23, 2024, to May 23, 2025. Dkt. # 21 at 2; *see also* Dkt. # 23-1 at 2.

In early June 2024, Plaintiffs moved onto the Property. *See* Dkt. # 25-1 at 5. Soon thereafter, Plaintiffs began noticing "weird smells in the house" and started experiencing "health symptoms." *Id.* at 6–7, 15. Plaintiffs soon learned, through conversations with neighbors, that the Property's former occupants had been witnessed engaging in "drug activity." *See id.* at 4, 14; *see also* Dkt. # 28-6 at 2. Plaintiffs moved out of the house and initiated testing. *See* Dkt. # 25-1 at 7–8, 13, 15; *see also* Dkt. # 28-9. "On or about August 26, 2024, samples from the insured property were taken and tested positive for methamphetamine pollution." Dkt. # 21 at 2.

Plaintiffs then filed a claim with Defendant—Claim No. 47-73S3-87W. *See id.*; *see also* Dkt. # 25-1 at 15–16. The claim was denied on January 22, 2025, with the letter of denial stating, "Based upon the results of our discussions and investigation, it was determined contamination of the dwelling was prior to the policy coverage period. Damage resulting from this cause of loss is not covered by your policy." Dkt. # 24-2 at 1. This action soon followed. *See* Dkt. # 1.

The parties now cross-move for summary judgment on the issue of coverage. *See* Dkt. ## 22, 27, & 31. Defendant requests that the Court issue a declaration of "no coverage" and grant summary judgment on all claims because "[t]here is no genuine dispute that the alleged loss and damage at issue in this case—contamination of the house from methamphetamine—was a preexisting loss that occurred prior to Plaintiffs' purchasing the State Farm policy and before coverage incepted, and before Plaintiffs owned or had an insurable interest in the property." Dkt. # 22 at 1. They also argue that summary judgment is appropriate because: (1) there was "no continuing damage to the Property which increased during the policy period"; and (2) even if there were, the methamphetamine contamination constitutes "contamination," and so it is "unambiguously exclude[d]" from the Policy's coverage provisions. *Id*. at 7–8; Dkt. # 31 at 1–2. Plaintiffs respond that the Court should deny summary judgment to Defendant and instead grant summary judgment in their favor, as: (1) the Policy's coverage provisions are activated by Washington's "trigger of coverage" theories; and (2) the methamphetamine contamination constitutes "vandalism," so its resulting damages are covered under the Policy. *See generally* Dkt. ## 27, 33, & 40.

As pertinent to these motions, it is undisputed that the Policy contains a "Policy Period" provision that states, "This policy applies only to loss under Section I or bodily injury or property damage under Section II that occurs during the period this policy is in effect." Dkt. # 23-1 at 48; *see also* Dkt. ## 22 at 4; 27 at 20. It is also undisputed that no one has used drugs in the house since Plaintiffs purchased the Property. *See* Dkt. ## 25-1 at 7, 16; 22 at 4; 33 at 5. And the parties have stipulated to the following fact: "Upon information and belief, the methamphetamine pollution of the property occurred sometime between late 2022 and late 2023, but in any event it is undisputed it occurred prior to May 23, 2024." Dkt. # 21 at 2.

## III
## DISCUSSION

A. Legal Standards

Summary judgment is appropriate if the evidence viewed in the light most favorable to the nonmoving party shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The party moving for summary judgment bears the initial burden of showing that there is no genuine dispute as to any material fact and that they are entitled to prevail as a matter of law on all claims for which they seek summary judgment. *See id*. A fact is "material" if it "might affect the outcome of the suit[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). And a factual dispute is "genuine" if "there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001).

If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in its favor. *See Celotex*, 477 U.S.at 324; *see also Anderson*, 477 U.S. at 250. Although a court must draw all "justifiable inferences" in favor of the nonmoving party, the nonmoving party "cannot rest upon the mere allegations or denials of the adverse party's pleading but must instead produce evidence that sets forth specific facts showing that there is a genuine issue for trial." *Est. of Tucker ex rel. Tucker v. Interscope Recs., Inc.*, 515 F.3d 1019, 1030 (9th Cir. 2008) (cleaned up and citations omitted). And if the nonmoving party bears the "ultimate burden of persuasion at trial," the party moving for summary judgment may prevail by "produc[ing] evidence negating an essential element of the nonmoving party's claim or defense" or by "show[ing] that the nonmoving party does not have enough evidence of an essential element to

carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000).

In insurance cases brought under Washington law, "[t]he party asserting coverage bears the burden of proving the loss is a covered occurrence within the policy period." *Walla Walla Coll. v. Ohio Cas. Ins. Co.*, 149 Wash. App. 726, 730, 204 P.3d 961 (2009). An insured can do so by showing that the property suffered from actual damage while the policy was in effect, or by showing that a "continuous process of damage" occurred during the policy period. *See Villella v. Pub. Employees Mut. Ins. Co.*, 106 Wn.2d 806, 811, 725 P.2d 957 (1986).[1] Under this second approach—known as the "continuous trigger" or "continuous damage" theory—an insurer can be held liable jointly and severally liable for all damages to the insured property, even if the process of damage started before the policy took effect, so long as the insured can show that some form of new or worsening damage, "however minute," took place during the policy period. *Id.* at 814.[2]

[1] Plaintiffs raise another theory for triggering coverage—the "manifestation trigger" theory. *See* Dkt. ## 27 at 2, 18, 21–23, 25–27; 40 at 3, 5–6, 11–14. But while recognized in some states, multiple Washington courts have explicitly declined to adopt the manifestation trigger theory for first-party property disputes. *See, e.g.*, *Ellis Ct. Apartments P'ship ex rel. Woodside Corp. v. State Farm Fire & Cas. Co.*, 117 Wash. App. 807, 813–14, 72 P.3d 1086 (2003) ("Washington has not recognized the manifestation doctrine in prior first-party cases, and we decline to adopt it here."); *Westridge Townhomes Owners Ass'n v. Great Am. Assurance Co.*, 2017 WL 4957634, at *4 (W.D. Wash. Oct. 31, 2017) ("The Court need not adopt the manifestation trigger discussed in *Ellis*[.]"). And Plaintiffs cite no case in support of Washington's purported "adoption of the 'manifestation trigger' for coverage," let alone provide any argument as to why the Court should adopt it here. *See generally* Dkt. ## 27 & 40; *see also Westridge*, 2017 WL 4957634, at *4 (explicitly stating that the court is *not* adopting the manifestation trigger theory); *Hillhaven Props. Ltd. v. Sellen Const. Co.*, 133 Wash. 2d 751,762–67, 948 P.2d 796 (1997) (discussing "manifestation of the loss" in the context of applying the known risk doctrine); *Aluminum Co. of Am. v. Aetna Cas. & Sur. Co.*, 140 Wash. 2d 517, 547–55, 564–68, 998 P.2d 856 (2000) (discussing "manifestation of damages" in the context of suit limitation clauses and allocation). Thus, the Court need not address the "manifestation trigger" theory in this Order.

[2] *See also Gruol Const. Co. v. Ins. Co. of N. Am.*, 11 Wash. App. 632, 635–38, 524 P.2d 427 (1974) (finding insurers jointly and severally liable, even though the initial negligent act took place before their policies began, because "the resulting damage [from the negligent act] was continuous" and "progressively worsened" during the insurers' policy periods); *Cadet Mfg. Co. v. Am. Ins. Co.*, 2006 WL 2105065, at *4 (W.D. Wash. July 26, 2006) ("Under the continuous trigger approach, all insurance policies in effect during periods of ongoing damage[s] are triggered, not just the insurance policy that was

If the insured can establish that a covered occurrence took place, the burden then shifts to the insurer to show that a policy exclusion applies. *See Walla Walla*, 149 Wash. App. at 730. Washington courts are instructed to "strictly construe[ ]" any exclusions or ambiguities in an insurance policy against the insurer, and are also required to give all terms "their plain, ordinary, and popular meaning as they would be understood by the average purchaser[.]" *Id.*; *see also Eagle Harbour Condo. Ass'n v. Allstate Ins. Co.*, 2017 WL 1316936, at *2 (W.D. Wash. Apr. 10, 2017). An insurer can thus avoid payment at this stage only if "specific policy language excludes the claimed loss[.]" *Id.*

But at either stage, and no matter who bears the ultimate burden of proof at trial, the court cannot grant summary judgment if it concludes that a genuine dispute exists as to any fact that would affect whether coverage exists. Courts thus frequently decline to determine coverage at the summary judgment stage, and instead will deny the parties' motions for summary judgment and submit the underlying disputed questions of fact to a jury.[3]

B. Analysis

Plaintiffs and Defendant both argue that they are entitled to judgment as a matter of law on the issue of coverage. *See generally* Dkt. ## 22, 27, & 31. Defendant says that Plaintiffs' claimed loss is not covered by the Policy because: (1) it is undisputed that the initial

---

in effect at the commencement of the initial property damage."); *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co.*, 134 Wash. 2d 413, 425, 951 P.2d 250 (1998) (Under "the continuous damage theory[,] . . . coverage under the occurrence clause requires the insured to sustain damage during the effective period of the policy. In other words, when damage occurs during a policy period, that policy is triggered.") (internal citation omitted); *Sunwood Condo. Ass'n v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 5499809, at *6 (W.D. Wash. Nov. 16, 2017) (collecting cases and concluding that the continuous trigger rule may be applied to first-party insurance cases).

[3] *See, e.g.*, *Sunwood*, 2017 WL 5499809, at *5 (denying the insured's motion for summary judgment because "[w]hether the [insured] can show damage or loss commencing during [the] policy period is a question for the jury."); *Eagle Harbour*, 2017 WL 1316936, at *6 (denying the insurer's motion for summary judgment because "[w]hether the [insured] can demonstrate a loss occurred during [the] policy period remains for the jury.").

methamphetamine contamination occurred before the Policy's inception; (2) Plaintiffs have not shown that any new or worsening damage occurred during the Policy period; and (3) even if they could, Plaintiffs are still not entitled to coverage because their claimed loss is subject to the Policy's "contamination" exclusion. *See generally* Dkt. ## 22 & 31. Plaintiffs respond that their claimed loss is covered by the Policy, as the methamphetamine contamination was "progressive in nature" and so some form of damage "occurred" during the Policy period. *See generally* Dkt. ## 27 & 33. They also say that their claimed loss is not clearly excluded from coverage because methamphetamine contamination constitutes "vandalism," not "contamination," under the Policy and Washington law. *See id*. For the reasons below, the Court concludes that neither party is entitled to summary judgment.

As for proof of coverage, Plaintiffs have provided enough evidence to create a genuine dispute of material fact as to whether the Policy's coverage is triggered by the continuous damage theory. Plaintiffs' evidence suggests that the methamphetamine contamination: (1) is "not fixed or static"; (2) has moved throughout the house and spread "more deeply into materials and personal property" during the Policy period; and (3) has caused property damage that is "progressive in nature." Dkt. #35 at 12–13.[4] Viewing this evidence in the light most favorable to Plaintiffs, a reasonable juror could conclude that new parts of the home were contaminated or that contamination in the home worsened during the Policy period, thereby triggering coverage

[4] Because "[t]he Court cannot weigh evidence, draw inferences from facts, or decide credibility on a motion for summary judgment[,]" *Foremost Ins. Co. Grand Rapids Michigan v. Guillen*, 641 F. Supp. 3d 980, 986 (W.D. Wash. 2022), Defendant's concerns with the Declaration of Sean Simmons, while perhaps valid, do not provide an adequate basis to grant summary judgment to Defendant. *See* Dkt. # 39 at 9–14. Likewise, while Defendant may legitimately disagree with Sean Simmons's opinions, such disagreement does not mean that Plaintiffs have presented "no actual evidence" of a "continuing loss." *See id.* at 8. Defendant's arguments on this topic are thus better suited for a motion to exclude or an argument at trial concerning the weight of the evidence, not a motion for summary judgment on the issue of coverage.

under the continuous damage theory.[5] And while the Court agrees with Defendant that this evidence is insufficient to establish coverage as a matter of law, it does find that this evidence suffices to raise a genuine dispute of material fact—whether Plaintiffs' "loss was progressive and incremental, with new loss commencing and damage worsening during [the] policy period"—that must be resolved by a jury. *See Sunwood*, 2017 WL 5499809, at *6; *see also Eagle Harbour*, 2017 WL 1316936, at *6 (denying summary judgment because "[w]hether the [insured] can demonstrate a loss occurred during [the] policy period remains for the jury.").

Additionally, if Plaintiffs can make this showing, the Court sees nothing in the "Policy Period" provision or RCW 48.18.040 that would preclude coverage as a matter of law. Because the continuous trigger theory treats progressive damage "as a single, continuing 'occurrence' for liability purposes[,]"[6] if Plaintiffs can show that the continuous trigger theory applies, they should also be able to show that they experienced a loss while the Policy period and their insurable interests under RCW 48.18.040 were in effect.

The Court also sees nothing in the parties' Joint Stipulation of Facts that would prevent this result. Contrary to Defendant's assertion, Plaintiffs never "stipulated that the loss and damage," or even the "contamination," occurred before the Policy took effect. *See* Dkt. ## 31 at 4, 8, 16; 39 at 4. Instead, they stipulated to the fact that "the pollution of the property . . . occurred prior to May 23, 2024." Dkt. # 21 at 2. But the fact that an event occurred before a certain date—here, pollution—tells us nothing about whether a different event—here,

---

[5] *See, e.g.*, *Cadet*, 2006 WL 2105065, at *5 (concluding that "the continuous and repeated exposure of soil and groundwater to [contaminants] constitutes continuing property damage" and thus triggers coverage under the continuous damage theory); *Gruol*, 11 Wash. App. at 635–36 (concluding that the progressively worsening dry rot is "a continuing condition or process" and thus triggers coverage under the continuous damage theory); *B & L Trucking*, 134 Wash. 2d at 421, 426 (concluding that landfill leakage that "occurred over many years" triggers coverage under the continuous damage theory).

[6] *Sunwood*, 2017 WL 5499809, at *5 (citation and internal quotation marks omitted); *see also Gruol*, 11 Wash. App. at 637–38 ("The damage, though continuing over a period of time, constituted a single injury.").

contamination and resulting damages from the initial pollution—continued to occur or progressively worsen after that date.[7] Likewise, the fact that the *pollution* "occurred" before the Policy period tells us nothing about when the Property *damage* and Plaintiffs' *losses* were complete, especially where, as here, Plaintiffs are relying on a continuous damage theory. *See e.g.*, *Sunwood*, 2017 WL 5499809, at *5 (explaining that the continuous trigger theory treats ongoing damage as a single, continuing injury); *Gruol*, 11 Wash. App. at 637–38 (same). The stipulation thus fails to defeat Plaintiffs' showing that a genuine dispute of material fact exists as to whether coverage was triggered as a matter of law.

Because Plaintiffs have made this showing, the Court proceeds to consider whether Defendant has identified specific language in the Policy that excludes coverage for Plaintiffs' claimed loss. Defendant claims that it has, as it "is uncontested that the methamphetamine was 'contamination'" and the "Policy unambiguously excludes the presence of contaminants from any source." Dkt. # 31 at 1. But the Policy does not say this. Per the Policy, Defendant need not cover any losses to the Property from "contamination or pollution, meaning the presence, discharge, dispersal, seepage, migration, release, or escape of contaminants or pollutants at or from any source." Dkt. # 23-1 at 34. The very next sentence, however, states, "This does not apply if the presence, discharge, dispersal, seepage, migration, release, or escape is itself caused by a peril described in SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY." *Id*. The Policy thus does not unequivocally exclude coverage for contamination-related damages; the Policy only excludes coverage for contamination-related damages that are

[7] Contrary to Defendant's position, *see, e.g.*, Dkt. # 39 at 4–8, the Court does not view Plaintiffs' argument to be conditioned on the term "occur" being ambiguous. Nor does it believe that the legal effect of the parties' stipulation hinges on the meaning of "occur," as there is nothing about the term's definition or the parties' use of it that affects the logic that an event can have occurred *and* a slightly different event (or resulting damages from the initial event) can still occur or continue to occur.

not caused by a peril described in "SECTION I – LOSSES INSURED, COVERAGE B – PERSONAL PROPERTY." *See generally id.*

SECTION I also lists "vandalism"—defined as "willful and malicious damage to or destruction of property" in a non-vacant dwelling—as a covered peril. *See id.* at 31. And while the Court agrees with Defendant that Plaintiffs have not proven that their claimed loss—ongoing contamination[8]—was unequivocally caused by "vandalism," it does find that Plaintiffs have raised a genuine dispute of material fact as to whether the former occupants' drug activity in the house constituted "vandalism" under the Policy.[9] The Court thus concludes that the record presents a genuine dispute of material fact as to whether Plaintiffs' claimed loss resulted from "vandalism" under the Policy's definition, thereby preventing it from concluding as a matter of law that Plaintiffs' claimed loss is or is not excluded by the Policy's contamination provision.[10]

---

[8] Defendant's argument—that the *vandalism* must be ongoing for coverage to be triggered, *see* Dkt. # 31 at 15—misapprehends the continuous trigger theory, the Policy's contamination provision, and the distinction between perils and losses under Washington law.

[9] *See, e.g.*, *Bowers v. Farmers Ins. Exch.*, 99 Wash. App. 41, 45–47, 991 P.2d 734 (2000), *as amended on reconsideration* (Mar. 7, 2000) (concluding that the tenants' marijuana growing operation constituted "vandalism"—a covered loss under the policy— because malice could be "inferred" from the tenants' acts, and granting summary judgment to the insured on the issue of coverage for mold-based damages, even though the policy specifically excluded mold-based losses); *Graff v. Allstate Ins. Co.*, 113 Wash. App. 799, 803–06, 54 P.3d 1266 (2002) (concluding that the tenant's indoor methamphetamine lab constituted "vandalism"—a covered loss under the policy—because the tenant's acts were "intentional," and granting summary judgment to the insured on the issue of coverage for contamination-related damages, even though the policy specifically excluded contamination-based losses); *Cumming v. United Servs. Auto. Ass'n*, 15 Wash. App. 2d 1044, at *11–13 (2020) (unpublished) (denying summary judgment to the insurer "because a genuine issue of material fact remains as to whether [the insureds'] losses were covered under the vandalism provision of the policy"); *Young v. Safeco Ins. Co. of Am.*, 2022 WL 4017893, at *11–12 (W.D. Wash. Sept. 2, 2022) (concluding that a genuine dispute of material fact exists as to whether the tenants' acts are covered by the policy's vandalism provision and clarifying that it is "the act that must be intentional, not the damage. And the latter need only be a reasonably foreseeable result of the act.").

[10] *See, e.g.*, *Cumming*, 15 Wash. App. 2d at *8–13 (reversing grant of summary judgment because there is a genuine issue of material fact as to whether the insureds' claimed loss for methamphetamine contamination was caused by "the escape of pollutants," an uncovered peril, versus "vandalism," a covered peril); *Ridge at Riverview Homeowner's Ass'n v. Country Cas. Ins. Co.*, 2023 WL 22678, at *12 (W.D. Wash. Jan. 3, 2023) (concluding that the exclusions raised by the insurer "do not bar coverage for the claimed loss" because they must be strictly construed against the insurer).

Accordingly, the Court does not find that either party has met their burden of establishing "that there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex*, 477 U.S. at 322–23. Summary judgment on the issue of liability insurance coverage is thus inappropriate at this juncture, and so the Court denies the parties' cross-motions for summary judgment in full.

## IV
## CONCLUSION

For these reasons, the Court DENIES Defendant's Motion for Summary Judgment (Dkt. # 22), Plaintiffs' Motion for Partial Summary Judgment (Dkt. # 27), and Defendant's Cross-Motion for Summary Judgment Re: Contamination (Dkt. # 31).

Dated this 22nd day of July, 2026.

John H. Chun
United States District Judge